May I please report, counsel to the respondent. My name is Eric Rossman. I'm with the Rossman Law Group, PLLC, in Boise, Idaho. I would reserve, if I could, three minutes for rebuttal argument in this case. As the court may be aware from the briefing in this case, this is a state law wrongful death and survivorship lawsuit filed under common law state claims, state court claims in San Diego, California. The claims relate to a Medicare Advantage plan offered and administered by the respondent, for which the decedent, Mr. Aylward, was a beneficiary. The case was removed by the respondent to federal court, Southern District of California, on diversity of citizenship grounds, which was litigated. And ultimately, the court granted the defendant's motion for summary judgment on two legal issues, the exhaustion of remedies under the Medicare Act and preemption under the Medicare Act. On appeal, the appellant submits at its core that this is a lawsuit alleging the failure to conduct a reasonable investigation into Mr. Aylward's claim for lung transplant benefits. It is not a claim under Medicare. Do the federal regulations prescribe any obligations or contain any particular reference to how an investigation or an evaluation of a claim is to be conducted? Thank you, Judge Collins. That's a very important point that I will emphasize repeatedly in that there is no established regulation by... ruled statute by Congress or regulation by CMS that would relate to the scope or reasonableness of the investigation of a claim. But I think everybody would agree in this case that there was an obligation to reasonably investigate the claim. Ms. Hudson, who was the claims processor, admits that she was obligated to conduct a full and complete investigation on the original claim. So where did that obligation come from? Not the Medicare Act, not any Medicare regulations, state law. And who was best to address and deal with issues of state law? I would submit the state court or the federal court, not a Medicare benefits reviewer. So, no, there is not an established regulation or standard anywhere in the Medicare Act that would address the scope or reasonableness of the investigation. And that is the core of this lawsuit. What we're claiming is, if SelectHealth had done the investigation on the original claim in August of 2016, that it actually conducted on the appeal in October of 2016, the same determination would have been made in August and Mr. Aylward would be alive today. Ms. Shonrock, who ultimately determined on the appeal the dual listing was medically necessary, she testified in her deposition that she was looking at it as a second opinion for the medical reviewer that reviewed the original claim. So she was reviewing exactly the same information that that reviewer had before him and making a second opinion on that determination. But at that point in time, they knew by placing two phone calls to the transplant coordinator in San Diego and the transplant coordinator at St. Joe's, they knew three things. One, that St. Joe's would accept all testing performed by UCSD, so that there would not be any duplicative testing. Mr. Aylward was at a critically ill stage in his disease. He needed transplantation immediately. The average wait time at St. Joe's was 15 days before transplantation. The average wait time at UCSD was two years. They would have known that in August if they just placed two phone calls. And that is where this claim is based. It's not based on the interpretation of any Medicare regulation or standard. It's based on the failure to exercise reasonable caution in the investigation of the original claim. And... Well, I'm having a little trouble following this, but maybe you can help me out. So it sounds to me like what you're saying is that your claims are ultimately based on the defendant's refusal to approve the August 23 pre-authorization request. And if that's so, that would be governed, would it not, by the general Medicare coverage preclusion for services that are not reasonable and necessary for the diagnosis or treatment of illness or injury. So why isn't all this preempted? Yeah, Your Honor, that's a very good point. I want to emphasize again, the basis of the claims in this case are not, we are not challenging the approval or denial of a claim. Because ultimately Select Health, when it actually performed the investigation on the appeal, made the determination that he was entitled to the benefit. Made the determination that dual listing was medically necessary and approved consultation and additional testing. Our point is simply, if Select Health had done the investigation in August, that it actually did in October, it would have made the same decision it made in October, as Ms. Schonrock said. She was just offering a second opinion based upon that information that was submitted. So the crux or the source of our claim in this case is not the approval or denial of a Medicare benefit or Medicare claim. The source is the failure to conduct a reasonable investigation that by Select Health's own conduct would have resulted in approval in August when this man's life could have been saved. This is a Medicare- Was that argument made in the court below? Yes. And what did the judge say in response to that argument? Well, I can't- He didn't really say much from the bench, but in his order, I think the court has a memorandum decision in order. The court, I don't think, really appreciated the argument that I'm making to this court. I understand you're telling me that he did not appreciate, but that was not my question. My question was, what did the district court say on the issue? The district court held that there were, on the exhaustion requirement, that there were Medicare issues that were inextricably intertwined with the claim. And I couldn't really tell from the memorandum decision, so I can't really interpret what the judge was saying in that ruling, in that the court was really, I think, just concluded that because there were benefits determinations, that those issues are inextricably intertwined in the claim, and it's not. No jury in this case will be called upon to make a determination as to whether or not SelectHealth appropriately approved or denied a claim. The only thing a jury would be called upon is to determine whether or not SelectHealth conducted a reasonable investigation, and if it had, would this man's life have been saved? Well, in looking at the issue of whether or not they had conducted an adequate investigation, wouldn't they have to have assessed what facts would have been obtained as a result of what you claim should have been the investigation at the earlier point, and then to weigh those against the Medicare standards to see whether or not the claim would have been granted at that earlier time? And isn't that kind of getting into the Medicare Act standards? No, because again, as I indicated to Judge Rakoff, ultimately SelectHealth, based upon this information after it did the investigation, two months later approved the claim. So if they approved the claim, if they'd done that same investigation in August, and that's all we're asking the jury to make a decision on, if they'd done that same investigation in August, they would have made the same determination. I still don't see how that is different from saying they wrongly denied the August claim for whatever reason, but in contravention of Medicare standards. Because SelectHealth has admitted that dual listing for this patient was in fact medically necessary. They admitted it by approving it. And so the point before the court would be, had they done an investigation, the same investigation they did in October, a reasonable investigation, by their own conduct they've admitted that dual listing was medically necessary and would have been approved in August. Because there was nothing that they had. I suspect that Naomi's claims, if they're inextricably intertwined with the Medicare Act, is where the district court was going. And you're saying you should never have gotten into the Medicare Act. You should stay on straight negligence. Am I right on your analysis? You are. We're not talking about something that's in it, the Medicare standard that's inextricably intertwined in this case. And so your case really falls or rises on whether or not we find that the claims were inextricably intertwined with Medicare. That's on the exhaustion requirement, Your Honor, because the courts really, Ninth Circuit courts really identified three situations where the exhaustion requirement would come into play. One is where you're seeking a claim for benefits. Obviously you have to go through the Medicare procedure. Second would be a cleverly disguised claim for benefits. Neither one of those exist in this case. This is a case just like the artery decision where the plaintiff is seeking wrongful death damages. So the last would be if the claims are inextricably intertwined with Medicare standards. And I would submit that this case, the Medicare standards in this case are far less intertwined than they were in the artery case where this Ninth Circuit court panel unanimously ruled that exhaustion was not required. Aren't there two issues here? There's the issue of exhaustion where I do have some questions about the district court's decision and the issue of preemption. That's a separate issue, yes? Yes. Preemption was really not at play in the artery case because the 2000 Medicare Plus C statutory amendments to include the preemption provision and then the 2003 Part D amendments to include the present preemption provision were not in play at that point in time or they were not part of the statute. But the court did address preemption from an exhaustion standpoint. And the court said principally that where the plaintiff wasn't pursuing recovery of benefits, the Medicare standards were not inextricably intertwined and therefore there was no exhaustion requirement. And as far as I know, our dairy is still good law on that exhaustion issue. This court has never come back and said that the court was wrong in our dairy. And our dairy involved, specifically involved the decision whether or not to approve a claim. Basically, they were saying that oral representations were made. But again, and forgive my confusion on this point, let's assume you are right that exhaustion has occurred or there was no further requirement for exhaustion. But let's also assume, contrary to what you're arguing, your claim is inextricably intertwined with Medicare and Medicare standards. Then aren't the state claims preempted? The inextricably intertwined language comes from the case decisions on the exhaustion side. That was addressed by the court in our dairy. On the preemption side, the question is does the current statute create preemption over common law claims such as those asserted in this case? And I think the best evidence of that, I think this court in Doson Oum did not rule that the Medicare Act preemption provisions provide complete preemption over common law claims. In fact, the court did not say that. And in fact, CMS in its interpreting comments has said the opposite. What CMS said is there's preemption, all state standards, including those established through case law are preempted to the extent they specifically would regulate Medicare Advantage plans with the exception of state licensing and solvency laws. And then CMS said, and this is in their 2005 comments, we continue to believe the generally applicable state tort contract or consumer protection law would not be preempted under the act. And what they're saying there, and I think what that means as it relates to this particular case, is are we asserting a standard, a state law standard that specifically regulates a Medicare plan, or are we asserting a standard that is generally applicable? And the duty to reasonably investigate is generally applicable to every healthcare plan, no matter what its origin is. It's not specific to a Medicare Advantage plan. And if you're- One minute left, I don't know if you want to reserve that for rebuttal. I will reserve that for rebuttal. Thank you, Your Honor. All right. We'll hear now from Mr. Bradshaw. Thank you, Your Honor. Alan Bradshaw on behalf of Select Health. I would like to begin by discussing the preemption issue, which I believe is dispositive in this case. Actually, we had a question first about exhaustion. It seemed to me that the remedies were exhausted because the appeal was pursued and the decision was overturned, but it was sort of too late in coming. And so what would there be to exhaust? What are the additional procedures that would have to be undertaken to complete and satisfy the exhaustion requirement? It would be, Your Honor, that the claim is centered not on the granting of the right, but on the original denial, which the plaintiff alleges came too late. And for that provision, they have a remedy. And the remedy is that under the Medicare statute and the specific regulations, which I will address in detail, there is a right not only to appeal every determination, but there is a right to bring a grievance procedure with respect to any conduct that they allege was inappropriately done by the Medicare organization. And it is critical that the exhaustion issue in this inextricably intertwined analysis be considered in the context of what the law was at the time of these events. So what would this grievance procedure look like and what would the remedies available on that be? Well, the remedies, Your Honor, I don't know that I could necessarily speak exactly to the grievance remedy, but the grievance remedies or the remedies available for appeal are to have the determination overturned. The grievance remedies are essentially unprescribed. It's not even necessary that you be asking for a specific benefit determination. The grievance procedure expressly provides you can complain about anything that is available to you. And you're saying, wait, wait, let me get this straight. You file a claim, it's initially wrongly denied. You challenge that and they change their mind and they give you what you asked for. But you say that you still haven't exhausted because you should have pursued this very vague, even as you talk about it, grievance remedy since what you're complaining about is the delay. And what would be your remedy from select if you filed that grievance and they said, yep, we took too long. What would be the remedy that they could afford you? The remedy would be in connection with what the Medicaid statute provides, which, and I also need to point out that they also have a remedy under the determination provision because the determination provision, their complaint is this should have been treated as a fast appeal and was not. But the key point there is that they had a remedy under express Medicaid provisions. This is, all of this is regulated by 42 CFR part 422. And it is this thick. And under those provisions, I would specifically refer the court to subparts 562, 566, 568, 570, 572, 584 and 590. Those regulations extensively regulate this, including under 572, the point I was just making is if their complaint is, we should have been granted a fast appeal and we didn't get it. They have an express remedy under subpart F that that itself is an adverse decision under the determination provisions, which may be appealed. So they had a right to immediately pursue that pursuant to those regulations. Would those regulations provide for the cause of death? They would provide for a determination with respect to all aspects of the determination itself, as well as what I previously stated. My question really is in any of those, can any of those lead to a claim for wrongful death because of the late advice? No, your honor. And that's because of preemption, which I feel like I need to get that in front of the court because the preemption issue needs to be considered before you get to the inextricably intertwined because in 1997, Congress first created a preemption provision. It was conflict preemption. And it was if there was a state cause of action that conflicted with a Medicare regulation, then there was conflict preemption. In 2003, Congress amended that statute and created field preemption with one very limited exception. And so you cannot get to the inextricably intertwined analysis until you first consider the preemption and what state law claims can survive through preemption. That language is- But if you're right about preemption, we don't have to reach exhaustion, right? Absolutely. And you don't need to. And the standard is, it says, the language is, the standards established under this part shall supersede any state law or regulation other than state licensing laws or state laws related to plan solvency with respect to MA plans, which are offered by MA organizations under this part. I would refer the court- Do I understand correctly that if in fact the delay was negligent, that is, somebody put it on their desk and they didn't get to it in six months, straight negligence, that that has been preempted, that they cannot go that direction to receive compensation? Absolutely. Without question. That's your point. That's the point. And I would refer- Suppose the employee, rather than just losing it on the desk, suppose the employee looks at it and says, you know, I really dislike this person and I'm just going to stamp a big denied right on it and just let it go. And besides, you know, I got yelled at for approving a claim, a large claim the other day by my supervisor. So I'm just going to let this go through as a deny and a straight, what would be a bad faith, a bad faith claim. Is that preempted? Does federal law provide any kind of rule or obligation on that? No, your honor. And the reason that cannot happen and the reason there is a remedy under the Medicaid law is because there are detailed and specific procedures with respect to the investigation, how it proceeds and how it's appealed, including that the healthcare organization has to have a medical director who is a physician and all denials have to go immediately to appeal to a physician, which is what in fact occurred here. So there is a very detailed and express remedy for exactly what investigation is done and how it's done. And one important factual note, plaintiff's counsel has indicated that it was approved. What was approved was a different set of tests that were only subsequently requested in October at St. Joseph's when they decided that they would be pursuing, rather than the initial test that had already been done at UCSD, they would be pursuing esophageal tests related to Mr. Elwood's reflux condition. And those were only first identified in October. And they had a remedy with respect to all of those provisions, including under detailed regulations when St. Joseph's was indicated that they had had a self-referral for a consult and Select Health denied it, St. Joseph had an appeal right to pursue that. They also indicated at the time that Select Health responded that they would be pursuing information to determine what test UCSD had done and coming back to determine whether there were tests that they could live with and what additional tests they would request it. That's exactly what happened. But none of that happened because UCSD didn't send the records to St. Joseph's until October. And immediately upon those records being sent and the request being modified, the approval was made, but it is of different tests. And- Has any court expressly addressed the question of whether a bad faith common law tort cause of action is preempted by the Medicare Act? I think that the cases that I think are key, that I think that at least go very far in that direction, I would cite the Oom case from this court, the Shakespeare case, which is dealing with a stroke prevention device that was not timely approved, the Schneider case, which is very helpful from the Indiana Court of Appeals addressing this issue of preemption under the 2003 modification of the law and is a wrongful death case with respect to the person received ambulance service rather than air transport. The Halen case from the District of New Mexico, which again is a wrongful death liver transplant case and is the most factually on point. And the Hepstall case, which is dealing with the refusal to pay for care without proper investigation. All of those authorities expressly are dealing with the kinds of claims we address here. I wanna make one really important point. Council has referenced this court to 70 Federal Register 4588, which is the 2005 CFS guidance. And it expressly addresses the preemption issue. And I would refer the court to page 4694, which is addressing the federalism and preemption issues. And here's what the CMS says. In 2003, the amended section for Medicare Advantage plans eliminated the general and specific preemption distinctions and expanded federal preemption of state standards to broadly apply preemption to all state law or regulation other than licensing laws or state laws relating to plan solvency. The revision relieves uncertainty of which state laws are preempted by preempting the field of state laws other than state laws on licensing and solvency. Clearly, the allegation that common law, covenant of good faith and fair dealing under insurance law is not a state law on licensing or solvency. It is preempted. We never even get to the inextricably intertwined issue under the exhaustion requirement. And the cases that I cited the court to, which are all after 2003, Boom, Shakespeare, Snyder, Haland, Kempstall, all recognize that reality, that it has been preempted. Now, I would like to briefly address because what the plaintiff has done here is address the preemption statute as it existed in 1997, which is post-Heckler, post-Ardere. Ardere doesn't address preemption because it is before any statute exists. But even if you apply the straight up conflict issues, there's no way to reconcile the plaintiff's theory of bad faith under insurance law with the express regulations. I would refer to 562, which is the general provisions address creating the appeal rights and governance. 566 is the organization determinations and specifically prescribes the kind of physician review that was required here. Exactly what investigation did you need to do and how do you do it? 568, the standard timeframes and notice requirements for organization determinations, spells out in tremendous detail exactly how we proceed. 570, expediting certain organization determinations, exactly how you're supposed to accelerate certain situations and when that occurs, including when the enrollee has a physician who's asking for the additional care. 572, the timeframes for expedited reviews, including what I said previously, which is they could have appealed the non-granting of the expedited review. 584, which is addressing the expediting reconsideration. There's a process for not only making the determination, but reconsidering. And then 590, the timeframes and responsibility for reconsiderations. All of those regulations are directly applicable here. With that, your honor, I would submit it. Thank you, counsel. I think Mr. Rossman, you have a minute left. You're on mute. I would emphasize again that there is no and Mr. Bradshaw has not cited a single regulation, federal regulation that relates to the scope of the investigation on the original claim in August of 2016. There is not one. In order for this court to find preemption, I would submit this court would have to find complete preemption of common law with the two exceptions of insolvency and licensure. And even CMS doesn't agree with that. CMS in those same comments said, standards, including those established through case law are preempted to the extent they specifically would regulate Medicare Advantage plans. And they also said, we continue to believe that generally applicable state tort, contract or consumer protection law would not be preempted under the law, under the act. There is no evidence that Congress intended a complete preemption. You took out the inconsistency provision that was in the original statute to the extent that one could assert a, I see I'm out of time, may I finish? Yes, go ahead. To the extent that one could assert a state law claim on something that they would allege to be a consistent standard with something in Medicare. I do believe that if there is a Medicare regulation, any claim in state court would be preempted by that particular statute. But there's not in this case. The entire claim is centered on the lack of a reasonable investigation. So with that, I would request, thank you, Your Honor. Thank you, counsel. The case just argued will be submitted. And with that, our session for this morning is concluded.
judges: Wallace, Rakoff, Collins